**Harold Maurice RICHARDSON,
Appellant,**

**v.**

**The STATE of Texas, State.**

**No. 2–91–192–CR.**

Court of Appeals of Texas,
Fort Worth.

Aug. 11, 1993.

Rehearing Overruled Sept. 22, 1993.

Robert G. Estrada, Wichita Falls, for appellant.

Barry L. Macha, Crim. Dist. Atty., and John W. Brasher, Asst. Crim. Dist. Atty., Wichita Falls, for appellee.

Before FARRIS, DAY and HICKS, JJ.

## OPINION

DAY, Justice.

Harold Maurice Richardson appeals his conviction for voluntary manslaughter. TEX.PENAL CODE ANN. § 19.04 (Vernon 1989). Following a jury trial, the court assessed punishment at ten years confinement, probated for ten years.

We affirm.

In his first point of error, Richardson complains the trial court improperly allowed the State to interject evidence of his character at the guilt/innocence phase of trial. In point two, Richardson contends he is entitled to a new trial because the State's and the defense's closing arguments are not part of the record on appeal.

During the guilt/innocence phase of trial, the prosecutor asked Ann Reeves, Richardson's wife: "Would you describe Harold [Richardson] at that time as a possessive or a jealous man?" Defense counsel objected to this question, but the objection was overruled.

A criminal defendant's character may not be placed before the jury in a murder case unless the defendant, himself, makes his character an issue. *See* TEX.R.CRIM.EVID. 404(a)(1); *Farar v. State*, 112 Tex.Crim. 199, 15 S.W.2d 1050, 1051 (1929); *Ramirez v. State*, 656 S.W.2d 82, 83 (Tex.App.—Tyler 1983, pet. ref'd).

Richardson was charged with and tried for the killing of Glenn Huff. The State contends its theory at trial was that the killing of Huff was attributable, at least in part, to Richardson's possessiveness and jealousy. Relying on TEX.PENAL CODE ANN. § 19.06(a) (Vernon Supp.1993), the State claims it was entitled to inquire into Richardson's state of mind at the time of the offense. Section 19.06(a) provides:

> In all prosecutions for murder or voluntary manslaughter, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, *together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense.*

*Id.* (emphasis supplied).

This section permits the admission of two types of evidence: (1) all facts and

circumstances surrounding the killing that are probative of the material condition of the mind of the accused at the time of the offense; and (2) all facts and circumstances surrounding the previous relationship between the accused and the deceased that are probative of the material condition of the mind of the accused at the time of the offense. *Fielder v. State,* 756 S.W.2d 309, 318 (Tex.Crim.App.1988). In a homicide case, the theories of the prosecution and the defense determine the material issues. *Id.*

■ Importantly, however, section 19.06 has neither changed, limited, nor extended the general rules of evidence and thus has not broadened the bases for the admission of evidence. *Fielder,* 756 S.W.2d at 318; *Werner v. State,* 711 S.W.2d 639, 644, 646 (Tex. Crim.App.1986).

■ For example, hearsay testimony, inadmissible under Tex.R.Crim.Evid. 802, is not admissible under section 19.06 merely because it tends to show the accused's state of mind at the time of the offense. *See Fazzino v. State,* 531 S.W.2d 818, 820 (Tex. Crim.App.1976), *overruled on other grounds, Dockery v. State,* 542 S.W.2d 644 (Tex.Crim. App.1975); *Erwin v. State,* 531 S.W.2d 337, 339 (Tex.Crim.App.1976). Similarly, other evidence of the accused's state of mind or relationship with the victim is not admissible unless it is relevant and thus material to the case. *Werner,* 711 S.W.2d at 644.

■ Tex.R.Crim.Evid. 404(a)(1) restricts the State's admission of evidence concerning a criminal defendant's character to those instances where the accused has first put his character in issue by offering evidence of a pertinent character trait. The State has cited no cases, and our research has revealed none, that would allow evidence of a defendant's character to be admitted under section 19.06(a) when it would not likewise be admissible under Rule 404(a)(1). In this case, Richardson had not presented evidence of his possessiveness or jealousy—or lack thereof—before the prosecutor questioned Reeves about these character traits.

Relying on *Ingham v. State,* 679 S.W.2d 503 (Tex.Crim.App.1984), the State also asserts the contested question was proper because a previous difficulty between the defendant and a third party may be proved if it led up to the charged offense, involved the victim in any way, or tended to reveal the defendant's motive or state of mind. *Id.* at 506. The context in which this rule is discussed in *Ingham* concerns whether *extraneous offense* evidence is admissible to prove the defendant's state of mind at the time the offense was committed. *Id. Ingham* does not address the admission of *character or reputation* evidence to show the accused's state of mind at the time of the offense.

We therefore find the trial court improperly overruled defense counsel's objection to the prosecutor's question. Once the objection was overruled, Reeves testified as follows:

Q. [PROSECUTOR] Would you describe Harold as a very possessive and jealous person?

A. When it comes to my welfare, yes.

. . . .

Q. And would that welfare include if you were dating or seeing other men?

A. Certainly.

This testimony goes directly to Richardson's character, and it should not have been admitted since Richardson had not placed his character in issue.

■ We must now determine whether the admission of the character evidence harmed Richardson. We find it did not. The record contains other evidence of Richardson's possessive and jealous tendencies that was properly admitted.

The following testimony was elicited from Sandra Allen, Reeves' sister, earlier in the trial: On the night Huff was killed, Richardson telephoned Allen's workplace, and Reeves was there. Richardson told Allen to inform Reeves "she has five minutes to get her ass home." Allen did not know why Richardson was upset but knew Reeves had telephoned him earlier and "they had had words on the phone."

At Reeves' request, Allen and her husband, Frank, followed Reeves home. Reeves reached Richardson's mobile home ahead of Allen. When Allen entered the residence,

Reeves "was crying a lot and Harold was cussing at her, calling her names and threatening to shoot her." According to Allen, Richardson told Reeves "she was a no good whore and a tramp and a slut and that he ought to just blow her damn head off while she was sitting in the floor." Richardson was holding a loaded gun while he made the threats.

The Allens left the trailer shortly thereafter. When Reeves attempted to follow them, Richardson "got her in a head lock and he just threw her down in [a] chair."[1] At this point, Allen became fearful for Reeves' life.

Allen testified Richardson had hit Reeves on prior occasions, although he did not hit her on the night in question. Reeves had previously told Allen she was afraid of Richardson and that he had threatened her (Reeves) several times, but she loved him and wanted to work out their problems. No objection was made to Allen's testimony.

In light of this evidence, we find beyond a reasonable doubt that Reeves' testimony in response to the prosecutor's question about Richardson's possessive and jealous tendencies did not contribute to Richardson's conviction or punishment. TEX.R.APP.P. 81(b)(2); *Daniel v. State*, 668 S.W.2d 390, 392 (Tex.Crim.App.1984) (no harmful error if the same facts are proved by other properly admitted evidence).

We overrule Richardson's first point of error.

By his second point, Richardson contends he is entitled to a new trial because the record on appeal does not contain the final jury arguments made by the State and the defense at the guilt/innocence phase of trial. Richardson asks this court to order the court reporter to furnish him a transcription of these arguments. Richardson cites no authority that would entitle him to either a new trial or a transcription of the arguments. Consequently, he has waived this point on appeal. *See Hefner v. State*, 735 S.W.2d 608, 626–27 (Tex.App.—Dallas 1987, pet. ref'd).

The burden is on the appellant or other party seeking review to see that a sufficient record is presented to show error requiring reversal. TEX.R.APP.P. 50(d). While Richardson designated the entire record of his trial, including "transcription of the notes of the reporter," for forwarding to this court, he has yet to move for supplementation of the record to include the missing arguments. *See Pike v. State*, 772 S.W.2d 130, 131 (Tex. Crim.App.1989).

Further, the court reporter is under a duty to make a full record of jury arguments only *when requested to do so by the attorney for any party to a case.* TEX.R.APP.P. 11(a)(2). *See also Walthall v. State*, 594 S.W.2d 74, 81 (Tex.Crim.App. [Panel Op.] 1980) (pre-TEX. R.APP.P. case holding it is trial counsel's responsibility to advise the court if he desires to have the proceedings or any part thereof reported). Richardson does not claim he requested the recording of the jury arguments or that the arguments were even made.

The record is silent on these matters, as well. After the State and the defense rested, the jury was excused while the court's charge was prepared. When the jury returned to the courtroom, the charge was read, and the jury immediately retired to deliberate. The record contains no notation regarding closing arguments.

We overrule Richardson's second point of error.

The trial court's judgment is affirmed.

---

1. Frank Allen testified similarly.